# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **CHARLES A. ELCAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:19-cv-01146** |
| **FP ASSOCIATES LTD.,** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim for Which Relief May Be Granted filed by defendant FP Associates Ltd. ("FP"). (Doc. No. 11.) For the reasons set forth herein, the motion will be granted and this case dismissed for lack of personal jurisdiction over the defendant.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint filed in this court on December 20, 2019 by plaintiff Charles A. Elcan, the plaintiff is a citizen and resident of Nashville, Tennessee, and FP is a real estate development and ownership company incorporated under the laws of the Commonwealth of The Bahamas, the principal place of business of which is in Freeport, Grand Bahama, The Bahamas. (Doc. No. 1 ¶¶ 1–2.) Elcan asserts damages arising from breach of contract—specifically, a Promissory Note—in excess of $75,000, and he invokes this court's diversity jurisdiction. (*Id.* ¶ 3.) He also asserts that the court may exercise personal jurisdiction over FP because it has "regular, direct, and systematic contacts with the State of Tennessee, including, but not limited to, with respect to the Promissory Note," and because the claims asserted in the Complaint "arise out of and relate to such contacts." (*Id.* ¶ 4.)

Elcan is a real estate investor, and FP is engaged in developing real property located in the Settlement of George Town on the Island of Grand Exuma in The Bahamas. On February 21, 2014, FP executed a Promissory Note ("Note") promising to Elcan the principal sum of $1,000,000 on or before February 21, 2017, "together with interest at the rate of Six percent(6%) per annum monthly in arrears commencing on" February 17, 2014. (Note, Doc. No. 1-1; see also Doc. No. 1 ¶¶ 6–9.) The Note provided that the whole amount payable thereunder would become immediately due upon default in payment of any interest due within ten days of the due date. The Note does not include any other language regarding when, where, or how payments of principal or interest are to be made.

Contemporaneously with the Note, the parties executed a Memorandum of Deposit of Deeds ("Memorandum") in favor of Elcan as "the Lender." The Memorandum documented that FP ("Borrower") had borrowed and received the sum of $1,000,000 from Elcan and that FP had "deposited with the Lender the title deeds certificates and other documents . . . with the intent to create an Equitable Mortgage" to secure the Note with the properties identified in the Memorandum. (Doc. No. 1-2.) The real estate pledged to secure the Note included parcels of land known as "White House" and "Pirates Cove," both situated in a Subdivision known as "February Point Resort Estates" (formerly known as Flamingo Bay Estates) in the Settlement of George Town on the Island of Grand Exuma. (Id.) Among other matters, the Memorandum reiterated FP's obligations under the Note,[1] documented FP's obligations to pay taxes and not to sell or otherwise

---

[1] It reaffirms the borrower's obligation to "pay to the lender the said sum of One million dollars . . . on or before the 21st day of February, A.D., 2014 with interest thereon at the rate of Six percent (6%) per annum." (Doc. No. 1-2, at 4.) Because the Memorandum is dated February 21, 2014 and because the Note specifies a repayment date of February 21, 2017, the court presumes that the reference to a repayment date of February 21, 2014 is a typographical error. The Memorandum makes no reference to monthly payments, nor does it specify a medium, method, or place of payment.

encumber the real estate, and granted Elcan the power to sell the real estate if FP failed to repay the amounts owed when due. Although the Note itself is silent on this matter, the Memorandum states that it is to be governed by Bahamian law. (*Id.*)

FP failed to repay any of the principal or accrued interest owed under the Note and Memorandum and is in default. On November 21, 2019, Elcan made a demand for immediate payment in full of all principal, interest, and other amounts due under the Note and Memorandum. FP has refused to honor its obligations under the Note and Memorandum. (Compl. ¶¶ 18–21.) Based on these facts, Elcan asserts a claim for breach of Note, and he seeks damages as well as specific performance of FP's obligations under the Memorandum.

Rather than answering the Complaint, FP filed a Motion to Dismiss, supporting Memorandum, and the Declaration of John S. McGarvey, seeking dismissal of the Complaint for lack of jurisdiction and for failure to state a claim for which relief may be granted (Doc. Nos. 10, 11, 12.) The plaintiff filed a Response and his own Declaration (Doc. Nos. 17, 17-1), and the defendant filed a Reply and Second Declaration of John S. McGarvey (Doc. Nos. 20, 21). Neither party requests a hearing.

McGarvey, in the first of his two Declarations, states that he is FP's President and Director. (Doc. No. 12 ¶ 1.) FP owns and develops real estate within the Commonwealth of The Bahamas only. (*Id.* ¶¶ 4–5.) FP is not authorized to do business in Tennessee; it does not own or lease real estate in Tennessee; it has no employees or offices in Tennessee, and it has conducted no business in Tennessee. (*Id.* ¶¶ 4-8.) The Note and Memorandum were prepared by Elcan's Bahamian legal counsel, Patrick Knowles, in The Bahamas and provided to McGarvey for his signature at Knowles' law offices in Nassau, on the island of New Providence, in The Bahamas. McGarvey signed the Note and Memorandum and delivered them to Knowles while physically present in

Knowles' office in Nassau. In his Second Declaration, McGarvey adds that neither he nor any other FP agent traveled to Tennessee in connection with the Note and Memorandum, and all communications between FP and Elcan occurred by telephone, email, and letter while Elcan was "allegedly" in Tennessee, though some communications about the Note and Memorandum also took place between FP representatives and Elcan's attorney in The Bahamas. (Doc. No. 21 ¶¶ 5–7.)

In response, Elcan attests in his own Declaration that "FP solicited a loan from [him] in Tennessee" in late 2013 or early 2014; FP's agents, McGarvey and William G. Price, Jr., FP's Secretary and Director, "negotiated the terms of the loan with [him] while [he] was in Tennessee; FP "ultimately delivered" the Note and Memorandum to him in Tennessee; he always intended the Note to be governed by Tennessee law (though he does not allege that he communicated that intention to FP); McGarvey sent wiring instructions to Elcan in Tennessee, and Elcan wired the loan funds from his bank account in Tennessee to FP in the Bahamas. (Doc. No. 17-1 ¶¶ 4–15.) According to Elcan, the parties understood that FP was to make monthly payments of principal and interest owed under the Note to him via wire transfer to his bank account located in Tennessee, but FP failed to make any payments under the Note. (*Id.* ¶¶ 17–18.) FP, through various agents, communicated with Elcan "in Tennessee via telephone calls, e-mails, and letters on numerous occasions over the past six (6) years" concerning "the Note and Memorandum, among other subjects." (*Id.* ¶ 19.)

## II.     RULE 12(B)(2) STANDARD OF REVIEW

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts," *Walden v. Fiore*, 571 U.S. 277, 283 (2014), and, thus, in order for this court to have personal jurisdiction over the defendant, the plaintiff must show he has (or had) sufficient minimum contacts with Tennessee such that "the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"Personal jurisdiction may be found either generally or specifically." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007)). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state." *Id.*

Rule 12(b)(2) provides for dismissal of a claim for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). A plaintiff bears the burden of establishing personal jurisdiction. *Air Prods. & Controls, Inc.*, 503 F.3d at 549. On a personal jurisdiction motion to dismiss, district courts have discretion to either decide the motion on affidavits alone, permit discovery on the issue, or conduct an evidentiary hearing to resolve factual questions. *See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 520 (6th Cir. 2006) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). The plaintiff's burden of proof is "relatively slight where . . . the . . . court rules without conducting an evidentiary hearing." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (internal quotation marks and citation omitted). When a district court rules on a motion to dismiss under Rule 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Beydoun v. Wataniya Rests.*

*Holding, Q.S.C.*, 768 F.3d 499, 504 (6th Cir. 2014) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). To defeat the Rule 12(b)(2) motion in such a case, the nonmoving party "need only make a *prima facie* showing of jurisdiction." *Id.* "[A] court disposing of a 12(b)(2) motion [without an evidentiary hearing] does not weigh the controverting assertions of the party seeking dismissal . . . because we want to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *CompuServe*, 89 F.3d at 1262 (internal quotation and emphasis omitted). "Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.*

## III.    DISCUSSION

FP argues in its motion that its contacts with Tennessee give rise to neither general nor specific jurisdiction. The plaintiff concedes that general jurisdiction does not apply (Doc. No. 17, at 7), so the court will focus on the existence of specific jurisdiction.

"A federal court's exercise of personal jurisdiction in a diversity of citizenship case must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Tennessee's long-arm statute provides the relevant governing state statute, and that statute has been interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)). Because "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical," "the two inquiries merge and the court need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process."

*Id.* (quoting *Aristech Chem. Int'l v. Acrylic Fabricators*, 138 F.3d 624, 627 (6th Cir. 1998) (internal quotation marks omitted).

The Sixth Circuit long ago laid out, and has repeatedly applied, a "three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant." *Id.* at 615. Under the so-called "*Southern Machine*" test, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state"; "the cause of action must arise from the defendant's activities there"; and "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

1. *Purposeful Availment*

Although all three elements of the *Southern Machine* test must be met to establish specific jurisdiction, the Sixth Circuit recognizes purposeful availment as the most important element— the "sine qua non for in personam jurisdiction." *S. Mach. Co.*, 401 F.2d at 381–82. The purposeful availment prong of the *Southern Machine* test asks whether FP "acted or caused a consequence" in Tennessee such that it "invoked the benefits and protections of [Tennessee] law" and, thus, could have "reasonably anticipate[d] being haled into court there." *MAG IAS Holdings*, 854 F.3d at 900 (citations omitted). The Supreme Court has stated that a defendant should not be brought to court in a particular forum "solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts" with that forum. *Burger King*, 471 U.S. at 475. In *Burger King*, the Court also indicated that "purposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS Holdings*, 854 F.3d at 900 (quoting *Burger King*,

471 U.S. at 475–76). The focus of the inquiry is on the "defendant's contacts with the forum State itself" rather than with the plaintiff or other parties. *Id.* (quoting *Walden*, 571 U.S. at 285). Thus, "mere injury to a forum resident is not a sufficient connection to the forum." *Bulso v. O'Shea*, No. 3-16-0040, 2017 WL 563940, at *2 (M.D. Tenn. Feb. 13, 2017), *aff'd*, 730 F. App'x 347 (6th Cir. 2018). Rather, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 571 U.S. at 290. A defendant's physical presence is not required, but "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* at 285.

The defendant argues that it is "obvious from the facts of record" that FP has not purposefully availed itself of the privilege of doing business in Tennessee, as its only contact with the forum has been "with the Plaintiff through the delivery of the Note and Memorandum, which took place in The Bahamas." (Doc. No. 11, at 8–9.) It contends that the mere existence of a contractual relationship between FP and the plaintiff, standing alone, is not sufficient to establish purposeful availment and, further, that the Note and Memorandum together are construed under the laws of The Bahamas, thus negating any "purported intention of [the defendant] to avail itself of the benefits of the laws of the State of Tennessee." (*Id.* at 9.)

The plaintiff, on the other hand, argues that the facts of this case "clearly establish FP's purposeful availment." (Doc. No. 17, at 9.) In support of this argument, Elcan claims that (1) FP solicited the loan from him in Tennessee; (2) FP's agents negotiated the terms of the loan with Elcan while he was in Tennessee; (3) the Note and Memorandum were delivered to Elcan in Tennessee; (4) FP, through McGarvey, sent wiring instructions to Elcan in Tennessee via email; (5) Elcan wired $1,000,000 to FP, and FP received the funds, from Elcan's bank in Tennessee; (6) FP agreed to make monthly payments of principal and interest to Elcan in Tennessee but failed to

make any payments, as a result of which it now owes Elcan over $1.3 million, thus causing harm to the plaintiff in Tennessee; and (7) FP, through its various agents, has "on numerous occasions over the past six years" communicated with Elcan in Tennessee about the Note and Memorandum, via telephone calls, letters, and emails." (*Id.* at 9–10.)

The Supreme Court has emphasized that "the facts of each case must [always] be weighed in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 485–86 (citations and internal quotation marks omitted). In this case, the relevant facts appear to be that FP "solicited" Elcan for the loan, although the plaintiff has not described what form this solicitation took. Negotiations regarding the terms of the Note and Memorandum took place between agents for FP in The Bahamas and Elcan in Tennessee, but neither party has provided any details regarding the scope of these communications or who initiated them. The Note and Memorandum were drafted by the plaintiff's Bahamian attorney in The Bahamas, executed by FP's President, John McGarvey, while he was in Elcan's local lawyer's office in The Bahamas and by FP's Secretary, William Price, while he was in Florida. The documents were delivered to Elcan by handing them to Elcan's attorney in The Bahamas. The documents concerned an investment and equitable mortgage in real property located in The Bahamas, and the Memorandum, at least, specified that it was to be governed by Bahamian law.

In addition, while Elcan's act of wiring money to FP in The Bahamas was a unilateral act by the plaintiff that cannot be attributed to FP for purposes of establishing FP's contact with Tennessee,[2] FP, by executing the Note and Memorandum, incurred an obligation to pay funds to Elcan, a resident of Tennessee. However, neither the Note nor the Memorandum specifies the

---

[2] *See Burger King*, 471 U.S. at 474 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))).

repayment terms—when, where or how—other than to state that FP agreed to pay Elcan the sum of $1,000,000 "on or before the 21st day of February, A.D., 2017 together with interest at the rate of Six percent (6%) per annum monthly in arrears commencing on the 17th day of February, A.D., 2014, until the full amount of principal and interest due hereunder has been paid and satisfied." (Doc. No. 1-1.) Elcan represents, and the defendant does not dispute for purposes of the Motion to Dismiss, that FP was to make monthly payments of principal and interest via wire transfer to Elcan's bank account in Nashville. It failed, however, to make any payments.

The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473. Although the precise issue identified by the Supreme Court in *Burger King* was whether Due Process permitted the exercise of "personal jurisdiction over a Michigan resident who allegedly had breached a franchise agreement with a Florida corporation by failing to make required payments in Florida," *id.* at 464, the Court did not find those bare facts, standing alone, to warrant the exercise of jurisdiction. The Court stated: "an individual's contract with an out-of-state party *alone* [clearly cannot] establish sufficient minimum contacts in the other party's home forum." *Id.* at 478. Rather, all of the parties' contacts, including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[,] must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479.

Taking all of these factors into consideration there, the Court found that, even though the defendant in that case did not maintain offices in Florida and never even visited there, the franchise

dispute "grew directly out of a contract which had a *substantial* connection with that State." *Id.*

(citation and internal quotation marks omitted). More specifically, the defendant

> deliberately reach[ed] out beyond Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization. Upon approval, he entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida. In light of [the defendant's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the quality and nature of his relationship to the company in Florida can in no sense be viewed as random, fortuitous, or attenuated. [The defendant's] refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida.

*Id.* at 479–80 (internal citations and quotation marks omitted). Based on these facts "it was, at the

very least, presumptively reasonable" for the defendant to be sued in Florida. *Id.* at 480.

Based on *Burger King*, the Sixth Circuit has found the purposeful availment prong met in

the context of a breach of contract action where, for example, "the parties did not engage in a one-

time transaction, but in a continuing business relationship that lasted a period of many years" and

"Defendants reached out beyond Kansas' borders to conduct business with a company whose

principal place of business it knew to be in Michigan." *Air Prods. & Controls*, 503 F.3d at 551;

*see also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (finding purposeful availment where "a

nonresident defendant transact[ed] business by negotiating and executing a contract via telephone

calls and letters to a resident of the forum state"). And, as the plaintiff points out, several district

courts around the country have found—at least at this stage of litigation, when the burden on the

plaintiff is slight—that the default of a loan extended to an out-of-state borrower, at the borrower's

solicitation, is sufficient to warrant the exercise of personal jurisdiction in the lender's state. *See,*

*e.g.*, *BPI Dev. Grp., L.C. v. Grange*, 181 F. Supp. 3d 604, 614, 613 (S.D. Iowa 2016) ("Plaintiff

has sustained its burden to show that Defendants purposefully availed themselves of the laws and

protections of Iowa by allegedly soliciting and entering into a loan agreement to be repaid to Plaintiffs in Iowa," even though the purpose of the loan was "to fund ongoing expenses of a North Carolina business"); *Buehler v. S & G Enters. Inc.,* No. 09 C 1396, 2009 WL 1543664, at *3–4 (N.D. Ill. June 2, 2009) (finding that the defendant "purposefully availed itself of a business relationship" with the plaintiff, an Illinois citizen, by reaching out to the plaintiff to solicit a loan to fund the defendant's business in Texas and by signing a Demand Note that "created a continuing relationship and obligation" between the parties and required the defendant to may payments of principal and interest to the plaintiff in Illinois).

It appears to this court, however, that *BPI* and *Buehler* are outliers. Other courts considering similar relationships have found jurisdiction to be lacking. In *CHS Inc. v. Farmers Propane Inc.*, 397 F. Supp. 3d 1324 (D. Minn. 2019), for example, the holder of a promissory note brought suit against the non-resident borrower, asserting that the maker of the note had failed to make any of the periodic payments required under the note. The court granted the defendant's motion to dismiss the complaint for lack of personal jurisdiction. It rejected the plaintiff's contention that the defendant's activities were "purposefully directed" to the forum state, since "emails and phone calls to individuals in the forum state lack sufficient quality to establish personal jurisdiction," particularly "when the defendant is not authorized to do business in the forum state, does not have any offices in the forum state, and owns no property there." *Id.* at 1330 (citing *Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015)). It also found that, "[w]ithout more, even wire transfers to the forum state, along with scattered emails and phone calls, are not enough to establish that the defendant purposefully directed its actions at the forum state." *Id.* (citing *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)). Although the plaintiff argued that the defendant signed a contract with a Minnesota choice-

of-law provision and agreed to the submission of payments in Minnesota, the court found it more important that the contract underlying the promissory note concerned the plaintiff's delivery of propane to the defendant in Ohio, which the defendant then sold to customers in Ohio, Indiana, and Pennsylvania. The promissory note also related to the "underlying propane transaction for Ohio delivery." *Id.* at1331. Further, the defendant had always dealt with the plaintiff's Ohio-based sales representative as its primary point of contact. Under the totality of circumstances, the court concluded that these factors were not sufficient to establish the "purposefully directed" element required by the Eighth Amendment's test. It also noted that nothing in the record suggested that the negotiations for the promissory note were "voluminous or prolonged" or that the defendant's "contacts with Minnesota [were] so numerous as to establish that [it] purposefully availed itself of the privileges of conducting business in Minnesota." *Id.* at 1332; *accord Midwest Swim & Active, LLC v. McFall*, No. 05-0312-CV-W-FJG, 2005 WL 2739235, at *5 (W.D. Mo. Oct. 21, 2005) (where the plaintiff brought suit to recover on three promissory notes, granting motion to dismiss for lack of personal where "the only contact alleged by plaintiff is entering into 'Missouri promissory notes' and accepting funds paid from a Missouri bank account," finding that "[t]hese are insufficient quantities of contact between defendant ICC and this forum to allow this Court personal jurisdiction over defendant ICC").

Alternatively, in those cases in which other courts have found that they *do* have personal jurisdiction over non-resident defendants sued on promissory notes, the contacts between the defendants and the forum have generally been significantly more extensive than they are here. *See, e.g.*, *Striker Entities, LLC v. Callander*, No. CIV-18-508-F, 2018 WL 10373081, at *6 (W.D. Okla. Oct. 2, 2018) (recognizing under *Burger King* that "a contract with an out-of-state resident alone is not sufficient to establish personal jurisdiction," but finding that the record supported a

conclusion that the defendant had purposefully directed his activities to Oklahoma, the forum state, where, among other things, the defendant had reached out to the plaintiff to invest in oil and gas wells in Oklahoma, intended to pay the funds owing under the promissory note with revenues from oil and gas wells drilled in Oklahoma, and had an ongoing relationship with, and obligation to, the plaintiff in Oklahoma for fifteen years); *Craco LLC v. Fiora*, No. 1:03CV676, 2004 WL 727025, at *3–4 (M.D.N.C. Apr. 2, 2004) (finding that it had jurisdiction over an out-of-state borrower in a suit brought by a lender to recover on three promissory notes, in particular because the case involved "not a single contact nor a single contract" but three separate promissory notes, "executed at regular intervals" over the course of several years, all showing that they were made in the plaintiff's office in North Carolina, the payments were due at the plaintiff's office in North Carolina, they were delivered, and the funds advanced, in North Carolina, and they contained a North Carolina choice-of-law provision); *Asean Homes, Inc. v. Miller*, No. CIV. A. 99-0294, 1999 WL 1102427 (E.D. La. Dec. 3, 1999) (finding the exercise of personal jurisdiction over a defendant appropriate in a dispute arising out of six promissory notes executed by the defendant, who was domiciled in Florida, in favor of the Louisiana plaintiff, where the defendant had "sought out plaintiff at its Louisiana offices for loans and "traveled to plaintiff's offices to sign a personal guaranty in Mandeville, Louisiana; "all commercial documents were prepared by Louisiana lawyers for use in Louisiana"; and the notes involved the "extension of funds by a Louisiana corporation and disbursement of funds from a Louisiana Bank").

These types of contacts are not present here. The court is mindful that the plaintiff must only make a *prima facie* showing of personal jurisdiction at this stage and that all the relevant facts are to be viewed in the light most favorable to the plaintiff. *MAG IAS Holdings*, 854 F.3d at 899. Nonetheless, the only facts alleged here to support purposeful availment are that the defendant

"solicited" a loan from the plaintiff in Tennessee, communicated with the plaintiff about the terms of the loan while the plaintiff was in Tennessee, and pledged to repay the loan to the plaintiff in Tennessee. The defendant does not indicate what form the solicitation took or what the relationship between the parties was, leaving unanswered the question of whether, for instance, the defendant contacted the plaintiff because it knew he had a pre-existing relationship with, and other investments in, The Bahamas. While the plaintiff also alleges "numerous" communications between him and the defendant or its agents over the preceding six years (Doc. No. 17-1 ¶ 19), he provides no detail about these communications or who initiated them, nor does he indicate how many took place between FP and the plaintiff's attorney in The Bahamas. And, while the plaintiff claims the defendant was obligated to wire funds to his bank in Nashville, Tennessee, the actual Note does not contain specific language about repayment and is, at best, ambiguous in that regard, while the Memorandum suggests that the repayment of principal and interest together were due no later than January 21, 2017.

Further, irrespective of the lack of detail regarding these contacts and assuming the truth of the plaintiff's allegations, the court finds it more important that the Note and Memorandum were drafted in The Bahamas by the plaintiff's attorney in Nassau, executed in the Bahamas, delivered to the plaintiff through his attorney in The Bahamas, and clearly manifested the plaintiff's intent to invest in real estate in The Bahamas, as further confirmed by the Memorandum giving the plaintiff an equitable mortgage and security interest in two parcels of property in the Settlement of George Town on the Island of Grand Exuma, The Bahamas. (Doc. No. 1-2.) The fact that the documents were "ultimately" delivered to the plaintiff in Tennessee is of minimal significance in light of the fact that they were presented by the defendant to the plaintiff's agent at that agent's offices in Nassau.

Finally, although the plaintiff contends that he "always intended" the Note to be governed by Tennessee law (Doc. No. 17-1 ¶ 9), his unexpressed intent is simply irrelevant. Under Tennessee choice-of-law rules, "the construction and validity of a contract are governed by the law of the place where the contract is made" "unless it appears it was entered into in good faith with reference to the law of some other state." *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 466 (Tenn. 1973) (citations omitted); *see also Se. Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006) (recognizing that "Tennessee adheres to the rule of *lex loci contractus*," pursuant to which "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent" (quoting *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)). The Note in this case was drafted by the plaintiff's attorney in The Bahamas and executed in the plaintiff's attorney's offices in The Bahamas, and, the plaintiff's assertions to the contrary notwithstanding, it contains no evidence of an intent that it be governed by the law of any other locale.[3] It is therefore likely that the Note will be governed by Bahamian law. The Memorandum itself expressly provides that it is to be construed under the law of the Bahamas. While a choice-of-law provision is not controlling of the question of whether it is appropriate to exercise personal jurisdiction over a defendant in enforcing the contract in which the clause appears, in this case, it serves to establish that the defendant did not intend to avail itself of the privilege of conducting business in Tennessee "such that [it] invoked the benefits and protections of [Tennessee] law." *MAG IAS Holdings*, 854 F.3d at 900 (citing *S.*

---

[3] The plaintiff argues that the absence of a choice-of-law provision in the Note constitutes evidence of his intent that it be governed by Tennessee law. If the document had been prepared and executed in Tennessee, this argument might gain more traction. Under the circumstances, particularly in light of the brevity of the Note itself and its pairing with the Memorandum, the lack of a choice-of-law provision does not constitute evidence of an intent that it be construed under Tennessee law.

*Mach. Co.*, 401 F.2d at 381). As a result, in light of FP's otherwise attenuated contacts with the State of Tennessee, the defendant was not given "fair warning" that execution of the Note and Memorandum might subject it to the jurisdiction of courts in Tennessee. *See Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)).

In sum, under all the circumstances presented here, the court finds that the defendant did not purposefully avail itself of the privilege of doing business in Tennessee, despite having allegedly solicited the plaintiff in Tennessee, communicated with the plaintiff in Tennessee, and pledged to repay a loan to the plaintiff in Tennessee.

Because purposeful availment is the "sine qua non" of personal jurisdiction, *S. Mach. Co.*, 401 F.2d at 381–82, this determination yields the conclusion that the defendant's motion must be granted. In addition, as discussed below, even assuming that the plaintiff has established both the purposeful availment and "arising from" prongs of the *Southern Machine* test, the exercise of jurisdiction over the defendant would be unreasonable in this case.

### 2. Substantial Connection and Reasonableness

The third prong of the *Southern Machine* test is that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.*, 401 F.2d at 381. The Supreme Court has explained that the "minimum requirements inherent in the concept of 'fair play and substantial justice' *may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities*." *Burger King*, 471 U.S. at 477–78 (citation omitted; emphasis added). Generally, where the first two criteria are met, "an inference of reasonableness arises" and "only the unusual case will not meet this third criteria." *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991) (citation omitted); *see Burger King*, 471 U.S. at

477 (observing that, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"). In determining whether the exercise of jurisdiction is reasonable, the court should consider, among other factors, "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prods. & Controls*, 503 F.3d at 554–55 (citation omitted).

While litigating in this forum would not unduly burden the defendant, its connection to Tennessee is markedly attenuated, given that the Note and Memorandum were drafted and executed in The Bahamas and delivered to the plaintiff's local attorney in The Bahamas, and the Note is secured by real estate located in The Bahamas. The Memorandum and likely the Note as well must be construed under Bahamian law, with which this court lacks any familiarity. The extent of the defendant's "purposeful injection into the forum state's affairs" has been minimal, *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002), and Tennessee's interest in adjudicating the dispute is slight. It is probable that discovery will involve the production of documents located primarily in The Bahamas and the depositions of individuals located in the Bahamas. Moreover, and perhaps most importantly, in order for the plaintiff to enforce any judgment he might obtain here, he will have to apply to the Bahamian courts, such that litigation here is potentially redundant.[4] In other words, an appropriate alternative forum exists, and litigating in that forum would provide the most efficient route to full resolution of the controversy

---

[4] Notably, the defendant asserts that, under the law of The Bahamas, neither the Note nor the Memorandum will be enforceable unless the duties required by the Statute Law of The Bahamas, Ch. 370 (the "Stamp Act") §§ 3, 18, are paid and "stamps" are received acknowledging the payment of those duties.

while also furthering *the plaintiff's* interest in convenient and effective relief. Finally, "the Supreme Court has held that '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.'" *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508–09 (6th Cir. 2014) (quoting *Asahi Metal Indus. Co. v. Super. Court of Cal.*, 480 U.S. 102, 115 (1987)).

Given all of these considerations, the court finds that the defendant has "present[ed] a compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. For this reason, too, the court finds that it does not have personal jurisdiction over the defendant.

## IV.    CONCLUSION

For the reasons forth herein, the court will grant the Motion to Dismiss for lack of personal jurisdiction. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge